H51dwhis
                              Sentence

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,              New York, N.Y.

4              v.                           15 Cr. 0537(VEC)

5    DARRYL WHITLEY,

6                  Defendant.

7    ------------------------------x

8
                                           May 1, 2017
9                                          1:17 p.m.

10
     Before:
11
                        HON. VALERIE E. CAPRONI,
12
                                           District Judge
13

14                          APPEARANCES

15   JOON H. KIM
          Acting United States Attorney for the
16        Southern District of New York
     BY:  ANDREW ADAMS
17        Assistant United States Attorney

18   MICHAEL K. BACHRACH
          Attorney for Defendant
19             – and –
     ADAMS & COMMISSIONG LLP
20   BY:  KARLOFF C. COMMISSIONG

21

22

23

24

25

H51dwhis

Sentence

1          THE CLERK:  United States of America versus Darryl

2    Whitley.  All counsel, please identify yourselves for the

3    record.

4          MR. ADAMS:  Good afternoon, your Honor.  Andrew Adams

5    for the government.

6          THE COURT:  Good afternoon, Mr. Adams.

7          MR. BACHRACH:  Good afternoon, your Honor.  Michael

8    Bachrach for the defendant Darryl Whitley as well as my

9    co-counsel on this case, Karloff Commissiong.

10          MR. COMMISSIONG:  Good afternoon, your Honor.

11          THE COURT:  Good afternoon.

12          Good afternoon, Mr. Whitley.  I'm sorry to keep you

13    waiting.

14          THE DEFENDANT:  Good afternoon, your Honor.

15          THE COURT:  OK.  Mr. Whitley's plea was entered in

16    front of the magistrate judge.  I have reviewed the transcript

17    of the plea, and I now accept that guilty plea.  I find that

18    there was an adequate factual basis for the plea, that

19    Mr. Whitley understood the rights he was giving up and waived

20    those rights knowingly and voluntarily.  I find Mr. Whitley

21    understood the consequences of his plea, including the

22    potential sentence that might be imposed, and agreed to forfeit

23    the proceeds of the crime.

24          Because I find that his plea was entered knowingly and

25    voluntarily and was supported by an independent factual basis

H51dwhis
Sentence

1   for each and every element of the crime charged, I accept his

2   guilty plea.

3           All right.  Mr. Bachrach, have you and your client

4   read the presentence report dated March 24, 2017?

5           MR. BACHRACH:  Yes, we have, your Honor.

6           THE COURT:  And have you discussed it with each other?

7           MR. BACHRACH:  Yes, your Honor.

8           THE COURT:  Mr. Whitley, have you read the presentence

9   report or has someone read it to you?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  And did you discuss it with your lawyer?

12          THE DEFENDANT:  Yes.

13          THE COURT:  OK.  Are there any objections to the

14  report, Mr. Bachrach?

15          MR. BACHRACH:  No, your Honor.  All the objections

16  were taken account of in the last submission.

17          THE COURT:  OK.  The presentence report will be made

18  part of the record in this matter and placed under seal.  If an

19  appeal is taken, counsel on appeal may have access to the

20  sealed report without further application to the Court.

21          I received a sentencing submission from the defense,

22  dated April 2, 2017, that included letters from a number of

23  friends of the defendant.  If any of you wrote me, thank you

24  very much.  I read all of your letters.

25          I received a supplemental submission on April 17 that

H51dwhis
Sentence

1    included a letter from the defendant dated April 6.  Thank you

2    very much.  I read your letter as well.

3              THE DEFENDANT:  You are welcome.

4              THE COURT:  I received a letter from the government

5    dated February 14, 2017, and a letter dated January 5 that laid

6    out the government's view of the relative culpability of this

7    defendant compared to his other codefendants.  That letter puts

8    this defendant in the eighth tier, which is at the bottom of

9    the scale of culpability.

10             The next step is a guidelines calculation.

11             MR. BACHRACH:  Your Honor, I am sorry.  I just wanted

12   to make sure you did receive all the documents because there is

13   one you did not mention, the mitigation report --

14             THE COURT:  I received that.  That was attached to

15   your submission.

16             MR. BACHRACH:  Thank you, your Honor.

17             THE COURT:  I did.

18             OK.  The next step is a guidelines' calculation.  To

19   the family members and friends, this is going to sound like a

20   little bit of gobbledygook but it is required.

21             So the defendant pled guilty to one count of

22   conspiracy to violate the racketeering laws.  In the context of

23   that conspiracy, the defendant admitted participating in the

24   robbery of a Chase Bank in LaGrange, New York in January 2016.

25             Pursuant to 2E1.1, the base offense level for

H51dwhis
Sentence

1    racketeering is 19, or the base offense level of the underlying

2    crime, whichever is greater.  In this case the underlying crime

3    is robbery, and the base offense level for robbery is found at

4    2B3.1(a).  It is 20.  That's greater, so that's the base

5    offense level.

6             The property of a financial institution was taken, so

7    pursuant to 2B3.1(b)(1), that's plus two.

8             Mr. Whitley pled guilty so he gets credit for

9    acceptance of responsibility.  That's minus three.  That brings

10   us to a total of 19.

11            Mr. Whitley has no prior criminal history so he is in

12   Criminal History Category I.

13            Level 19, Criminal History Category I yields a

14   guideline range of 30 to 37 months.

15            My understanding is that Mr. Whitley has been in

16   custody for approximately 15 months between state and federal

17   custody; is that correct?

18            MR. ADAMS:  That is correct, your Honor.

19            THE COURT:  All right.  Are there any guidelines

20   arguments that I haven't addressed, Mr. Adams?

21            MR. ADAMS:  No, your Honor.

22            THE COURT:  Mr. Bachrach?

23            MR. BACHRACH:  No, your Honor.

24            THE COURT:  All right.  I don't see a grounds under

25   the guidelines for a departure.

H51dwhis
                            Sentence

1              Are there any factual issues in dispute?

2              MR. ADAMS:  None for the government.

3              MR. BACHRACH:  No, your Honor.

4              THE COURT:  OK.  Would the government like to be heard

5    on sentence?

6              MR. ADAMS:  Your Honor, very briefly.  Our January

7    letter lays out Mr. Whitley's relative culpability.  He is at

8    the bottom of the stack here.  Much like Mr. Geronimo, whom the

9    Court previously sentenced in this case, this is sort of an

10   incident that was serious but does strike us as at least

11   somewhat aberrational.  Mr. Whitley has one prior conviction

12   for disorderly conduct previously, but he is certainly not

13   among the members of the YGz with ample prior violence or

14   anything like that.

15             So I certainly don't want to overstate the case with

16   respect to Mr. Whitley, but I do, as with respect to all of the

17   other members of the bank robbery conspiracy, want to reiterate

18   both for the Court and for the defendant that this was a

19   terrifying experience for the people inside these banks.  Even

20   though these were unarmed robberies, the people inside the

21   banks had no idea that that was the case.  They were afraid for

22   their safety, for their lives.  And the relatively small amount

23   of money that was obtained in the course of this bank robbery

24   doesn't mitigate that in any way.  That is a matter of luck,

25   largely, but also I think reflects some sort of the pettiness

H51dwhis
Sentence

1   of this whole scheme generally.  To put people in that amount

2   of fear for such a small payout I think speaks to a real lack

3   of moral compass with respect to everyone involved in this

4   case.

5          THE COURT:  Thank you, Mr. Adams.

6          Mr. Bachrach, would you like to be heard?

7          MR. BACHRACH:  Yes, your Honor, and I will try to keep

8   it brief as well, as I feel like I can for the most part rely

9   upon the written submissions, particularly in light of Mr.

10  Whitley's what I believe to be powerful letter that he wrote

11  entirely on his own.

12         The government just really put it perfectly.  This was

13  aberrational.  Mr. Whitley, unlike everyone else in the

14  indictment, Mr. Whitley was not a member of the YGz

15  organization.  The government specifically stated that during

16  his plea allocution.  He was an associate, which legally means

17  the same thing, because legally you are convicted of

18  racketeering regardless of whether you are a member or

19  associate.

20         But as far as what it means for him as a person

21  individually under 3553(a), there is a significant difference.

22  It means that on a brief period of his life, without joining --

23  he didn't join a gang, but for a brief period of his life, he

24  joined a couple of low-level members of that gang in one very

25  discrete act, a mistake, a huge mistake.  In fact, there were

Sentence

1    probably a couple of other small discrete acts along the way,

2    because you have to have a conspiracy, you have to have an

3    agreement before you do it.  But these were incredibly

4    aberrational.  This wasn't him as the full picture of him.

5           And we know that because of the family support that he

6    has.  And in this room we have his mother, we have his sister,

7    we have his brother, we have his girlfriend, and we also have

8    even Ms. Melendez from The Consulting Project.  We have

9    approximately ten letters, I believe, that were submitted, not

10   including his own, which show the strong family support and the

11   friends that support him as well.  That's important, because if

12   he was some gangbanger, if he was a member of this dangerous

13   YGz organization, I suspect you wouldn't see the type of

14   opportunity -- the type of support he has and the type of

15   opportunities that he is going to have once he is finally

16   released.

17          Eagle Academy has offered him a job once he gets out.

18   That job will allow him to be a mentor to at-risk youth, and

19   allow him to take his bad experience and take his mistakes and

20   make something good out of them by making sure that other young

21   youth who are in a similar situation that he had been don't

22   make the same mistake that he did.  He has that opportunity, if

23   given by your Honor, and I think, your Honor, he deserves it

24   greatly.

25          Comparing him to Mr. Geronimo is also a very good

H51dwhis
Sentence

1  point.  Mr. Geronimo, who is listed by the government in that,

2  just like Mr. Whitley, as that bottom tier defendant, although

3  he is listed as a low-level member.  I think every defense

4  attorney likes to come in and say that their client is the

5  lowest guy in the rung.  Well, Mr. Whitley really is.  Because

6  Mr. Geronimo was a low-level member and he's in the same

7  paragraph, the last paragraph, the last tier, but Mr. Whitley

8  isn't even a low-level member, so he is even less you can say

9  morally culpable in comparison, or less -- beyond simply the

10  act of the robbery, he has even less involvement than

11  Mr. Geronimo.

12         And Mr. Geronimo, however, is a perfect parallel of

13  defendants to compare him to since under 3553(a), one thing

14  your Honor needs to avoid is unwarranted sentencing

15  disparities.  Mr. Geronimo, like Mr. Whitley, is a first-time

16  criminal offender.  He is a criminal history category of I.  He

17  was involved, like Mr. Whitley, with only one robbery.  And

18  Mr. Geronimo received a sentence of time served.  To avoid

19  unwarranted sentencing disparities, we believe it is

20  appropriate to also give a sentence of time served to

21  Mr. Whitley.

22         There are additional considerations that would advance

23  that as well.  Your Honor, if this sentencing were to take

24  place after November 1st of this year -- and I understand the

25  guidelines haven't changed yet, but effective November 1st of

Sentence

this year, his guideline range will actually be one point lower

because of the fact that he is a first-time criminal offender.

So his guideline range -- the bottom of his guideline range

would be 27 months, not 30 months.

Additionally, your Honor, the BOP is not going to give

him credit for the five months he served in state custody.

THE COURT:  Yes, they will.  The presentence report as

written said that they will.

MR. BACHRACH:  Your Honor, I hope you are right.  In

my experience that's not always the case because of the fact

that the prior arrest was for a different charge.  And that

that's a considerable risk, because it was for a different

charge.  Even though he was certainly, as far as he knew,

arrested for the same thing, he was interrogated only for this,

but that is a concern we have.

Nevertheless, your Honor, with his background, with

the fact that he actually fully accepts responsibility, and not

only that, legitimately he is remorseful, as is evidenced by

his letter.  In his letter he talks about not wanting to make

excuses, but the reason he doesn't want to make excuses, which

he is really talking about mitigation, which your Honor knows

is not an excuse but to many people they don't understand the

difference.  But what he's really saying is that he understands

that he committed a significant crime, and he doesn't want to

excuse -- he doesn't want to make an excuse in a manner that

1    would denigrate that crime or the victims.  He wants to take

2    responsibility because he really realizes that it was a

3    mistake.

4           So, your Honor, I think one last -- the only last

5    thing I would just add is that when I talk about the support

6    that is going to take place, that he is going to have, the gang

7    operated in the Bronx.  Mr. Whitley and his family now live

8    just a few blocks from here, your Honor, in downtown Manhattan,

9    on the Lower East Side.  He is now separated physically from

10   the bad influences that were negatively impacting him in the

11   past.  Yet another reason -- another reason to believe that now

12   that he has -- if he is given this opportunity by your Honor,

13   he truly will live up to the commitments that he states in his

14   written submission.

15          Thank you, your Honor.

16          THE COURT:  Thank you, Mr. Bachrach.

17          Mr. Whitley, would you like to be heard?

18          THE COURT:  You can just stand.  You can stand

19   straight up.  The mic will hear you.  It is a good mic.

20          THE DEFENDANT:  My back would hurt.

21          I just want to say that I want to apologize to the

22   victims of the crime.  I take full responsibility for that.

23          I want to thank my family for their love and support,

24   and the mitigation of my lawyers.  And I just want to say I

25   failed as a son, a brother and a father, but hopefully I get

                             Sentence

1    back together and make everything right.

2               MR. BACHRACH:  He's a little nervous, your Honor, but

3    I think that's all he wants to say.

4               THE COURT:  Thank you, Mr. Whitley.  I think that was

5    what you needed to say.

6               THE DEFENDANT:  Thank you.

7               THE COURT:  All right.  Mr. Whitley, under federal

8    law, I'm required to consider the nature and circumstances of

9    the offense and the history and characteristics of the

10   defendant in deciding your sentence.  In terms of you, I've

11   considered your history and your characteristics.

12              I start with the fact that you had a challenging

13   childhood.  Your father was incarcerated for murder from the

14   time you were 10.  Your mother was a single parent raising five

15   children.  And you have learning disabilities and are ADHD.

16              That said, it appears to me that your mother was a

17   positive role model.  She was employed.  She took efforts to

18   keep you engaged to overcome your difficulties.  You told me

19   about gymnastics.  I can see that would be a good thing to run

20   some energy off of a kid that has ADHD, and you got to go to

21   New Hampshire with the Fresh Air Fund.  She put you in Catholic

22   school for a little time as well, and I gather you went to

23   Eagle Academy, which looks like a really good program.  Put

24   differently, although you grew up poor, you were really dealt a

25   better hand and you had a more engaged mother than many people.

H51dwhis

Sentence

1          I note that you have a child who is six years old.

2    Several of the people who wrote me talk about the fact that you

3    were an actively engaged father who shared custody with your

4    son's mother of your child.

5          I have considered that you have no real prior

6    convictions and you were a bit player in this gang.  You

7    apparently only participated in one bank robbery and that as

8    the getaway driver, although you certainly were aware that

9    other robberies were going to be or had been committed.  I've

10   also considered the fact that your employment history is, at

11   best, limited, and you have not yet gotten your GED.

12         In addition to all of that sort of history and

13   circumstances of the defendant, as well as the guideline range,

14   I am required to impose a sentence that is reasonable and no

15   greater than necessary to accomplish the goals of sentence.  I

16   have considered all of the required factors.

17         Among the most important I have considered starts with

18   the seriousness of the offense.  I appreciate that you only

19   committed one robbery and you got relatively little money, but

20   the amount of proceeds was not really within your control.

21         And I also appreciate that while an unarmed bank

22   robbery is less serious than an armed bank robbery, I agree

23   with Mr. Adams that the people in the bank did not know that it

24   was an unarmed robbery, and I am confident that they were

25   absolutely petrified.

H51dwhis
Sentence

1        I have considered the need to provide just punishment

2   for this offense while avoiding unwarranted disparities.  I

3   have taken into account the fact that I have more than 30, I

4   think, Young Gunnaz to sentence and that many were engaged in

5   far, far more serious crimes than this one.  I view you,

6   Mr. Whitley, as most similar to Mr. Geronimo and Mr. Gallimore.

7        I have considered the need to deter criminal conduct.

8   Mr. Whitley, deterrence has two aspects -- specific deterrence,

9   meaning deterring you, and general deterrence, meaning

10  deterring society at large.  In terms of specific deterrence, I

11  am concerned that the lure of the street is going to be strong.

12  I think it's helpful that you are no longer living up in the

13  Bronx and that you are now down on the Lower East side, but you

14  are going to have to be vigilant to avoid getting back with

15  your old buddies or falling in with people on the Lower East

16  Side who are doing the same thing.  That's going to be on you.

17  You've got to have the strength of character to say I've spent

18  15 months in jail and I don't ever want to go to jail again.

19  And that's on you.

20        I am struck by the fact that two of the people who

21  wrote to me, your sister Tiffany -- is Tiffany here?

22        A SPECTATOR:  No.

23        THE COURT:  OK.  And Carol Ford, who is a friend of

24  yours, wrote about the hope that you will not continue the

25  cycle of sons not having their father present.  I agree that

                              Sentence

the statistics are heartbreaking.

         That choice, Mr. Whitley, is entirely in your hands.
If you want to be there for your little boy, you can be there.
But you've got to do it.

         In terms of general deterrence, I think it is
important to send a message far and wide that the sort of
criminal conduct that you got involved in, organized criminal
conduct, that terrorizes and destroys neighborhoods has got to
stop.  It's incumbent on everybody, young men, to avoid the
pull; young women, who will say to their young men, no, don't
do it, get away, but that message has got to be sent -- that if
you get involved with this sort of criminal conduct, you are
going to spend substantial years -- not months, but years -- in
federal prison.

         Now, I've considered the need to provide you with
needed educational or vocational training, medical care, or
other correctional treatment.  In terms of you, Mr. Whitley, I
see three needs, which I think you recognize each of them, and
that's positive.

         In terms of education, I entirely endorse the notion
that you need to get your GED.  But I would say you also need
to learn a trade or other employable skills.  Learn how to do
something so that you can get out of minimum-wage jobs.  Get a
job that will pay you well.  There are a lot of apprenticeship
programs in this city that will teach you a trade, and I

H51dwhis
Sentence

 1   recognize that your antsy and that you've got attention

 2   deficit, but you know what, if you are working on a site and

 3   you're learning how to do electrical work or plumbing or things

 4   like that, that is going to keep you engaged, and I think you

 5   can do that if you try.  So I encourage you to do that.

 6         I think you need drug treatment.  I think you have

 7   been self-medicating and that's a problem.  It is very

 8   difficult to stay out of trouble and to stay employed and be a

 9   good role model for your little boy if you are strung out on

10   drugs.  So you've got to deal with your drug problem.

11         And I also am going to say it is mental health but I

12   don't know what the standard of care is for an adult who has

13   ADHD.  I don't know whether they still say the best answer is a

14   drug like Ritalin or Adderall or something like that, but

15   whatever it is, you need to get it so that you can stay focused

16   and stay out of trouble.

17         Taking all of this into account and the fact that you

18   have already served 15 months in jail and you are a first

19   offender, I do not think further jail time is necessary to

20   satisfy the goals of sentencing.  So I'm going to sentence you

21   to time served and three years of supervised release.

22         Mr. Whitley, I want you to consider supervised release

23   not as punishment, although it is an aspect of punishment, but

24   use your probation officer to help you.  They will know about

25   programs that can be helpful.  So think of it, think of your

H51dwhis
Sentence

1   probation officer as someone who can help you, and I think that

2   will (a) make the three years go faster and (b) it will make

3   you more successful with your supervised release.

4           There are mandatory conditions of supervised release.

5           You must not commit another crime.  You may not

6   illegally possess a controlled substance.  You cannot possess a

7   gun or other destructive device.

8           I am going to suspend mandatory drug testing because I

9   am going to order drug treatment as part of your supervised

10  release.

11          You must cooperate in the collection of DNA.

12          In addition to the standard conditions of supervision,

13  I am imposing the following special conditions:

14          You must submit your person, residence, place of

15  business, vehicle, or other premises or electronic devices

16  under your control to search if the probation officer has

17  reasonable belief that contraband or evidence of a violation of

18  the conditions of release may be found there.  Any search must

19  be conducted in a reasonable time and in a reasonable manner.

20          Failure to submit to a search may be grounds for

21  revocation, and you must inform the other residents of the

22  premises that they may be subject to search pursuant to this

23  condition.

24          You must participate in outpatient drug treatment as

25  approved by your probation officer, which may include testing

H51dwhis
                              Sentence

1    to determine whether you have reverted to the use of drugs or

2    alcohol.  You must contribute to the cost of services based on

3    your ability to pay and the availability of third-party

4    payment.

5           The court authorizes the release of drug treatment

6    evaluations and reports, including the plea sentence report, to

7    the drug treatment provider.

8           The defendant must participate in an outpatient mental

9    health treatment program as directed by the probation officer.

10   You must continue to take any prescribed medication unless you

11   are otherwise instructed by your mental health provider.  Here

12   again, you must contribute to the cost of services rendered

13   based on your ability to pay and the availability of

14   third-party payments.

15          The Court authorizes the release of available

16   psychological and psychiatric evaluations and reports,

17   including the presentence report, to the healthcare provider.

18          You must perform 100 hours of community service for

19   every year on supervised release.

20          Community service must be approved by the probation

21   officer, and I am going to recommend that it be focused on

22   working with at-risk youth.

23          I am going to ask you to write me a letter every six

24   months telling me how you are doing.  You have the ability to

25   write a nice letter.

H51dwhis

Sentence

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  So I want to know how you are doing.  OK.

3    Your first letter is due October 30, 2017, and then every six

4    months after that.

5          You must provide your probation officer with access to

6    any financial information, and you may not incur new credit

7    card charges or open new lines of credit without the permission

8    of your probation officer unless you are in compliance with

9    your payment of restitution.

10          You must report to the nearest probation officer

11   within 72 hours of today.

12          You must be supervised by the district of residence.

13          Mr. Adams, I was given an order of restitution, and

14   the amount on it does not match what was in the probation

15   report, so which is correct?

16          MR. ADAMS:  This is correct, your Honor.  The

17   difference has to do with the amount that was previously seized

18   from Mr. Whitley.  So, the amount in the order -- and I am

19   asking for this both for restitution and for forfeiture

20   purposes -- is the amount that was taken less $380.

21          THE COURT:  Less what was already recovered?

22          MR. ADAMS:  Correct.  So $5,370.

23          THE COURT:  So I am ordering you to pay restitution in

24   the amount of $5,370, and ordering you to forfeit $5,370.  That

25   amount is joint and several, meaning you and the other people

H51dwhis
Sentence

1  involved in that robbery are responsible for that amount of

2  money.  That is not all on you.

3          I am not imposing a fine because I find there is no

4  ability to pay a fine.

5          I must impose a $100 special assessment.

6          MR. BACHRACH:  Your Honor, can I have a minute with

7  the prosecutor?  I apologize.

8          THE COURT:  Sure.

9          MR. BACHRACH:  Thank you.

10          (Pause)

11          Thank you, your Honor.  I just wanted to ask, because

12  I only looked at that restitution order very briefly.  I just

13  wanted to make sure that restitution and forfeiture are both

14  imposed jointly and severally with the codefendants that were

15  also implicated on that January 29th robbery.

16          THE COURT:  I think that all of the financial

17  requirements are joint and several; correct, Mr. Adams?

18          MR. ADAMS:  That is correct, your Honor.  We are

19  asking that that be the case for everybody in the case.

20          THE COURT:  OK.

21          MR. BACHRACH:  Thank you.

22          THE COURT:  It is not going to incur interest.

23          MR. BACHRACH:  Thank you, your Honor.

24          THE COURT:  OK.  I am not imposing a fine because

25  there is no ability to pay.

H51dwhis
Sentence

1          I must impose a $100 special assessment.

2          Are there any open counts?

3          MR. ADAMS:  Your Honor, we move to dismiss any open

4    counts and underlying instruments.

5          THE COURT:  They are dismissed.

6          All right.  Mr. Whitley, to the extent you have not

7    given up the right to appeal through your plea of guilty and

8    the agreement you entered into with the government in

9    connection with that plea, you have the right to appeal.  If

10   you are unable to pay the cost of an appeal, you may apply for

11   leave to appeal in forma pauperis.  The Notice of Appeal must

12   be filed within 14 days of the judgment of conviction.

13         Anything further, Mr. Adams?

14         MR. ADAMS:  Nothing here, your Honor.

15         THE COURT:  Mr. Bachrach.

16         MR. BACHRACH:  Just a brief clarification.  The letter

17   that you would like Mr. Whitley to send every six months, would

18   you like him to send it directly to your Honor, or do you want

19   him to send it to me first and I will forward it?

20         THE COURT:  He should send it directly to me.  We will

21   give him the address.

22         MR. BACHRACH:  Thank you, your Honor.

23         THE COURT:  You are going to be relieved of your duty

24   to supervised him.

25         Mr. Whitley, every six months I want to hear from you.

H51dwhis
                          Sentence

1    I want to hear how you are doing.  I want to hear how your

2    little boy is.  I want to hear that you got a job.  OK?

3              THE DEFENDANT:  Thank you, your Honor.

4              THE COURT:  All right.  Thank you all and good luck.

5              MR. BACHRACH:  Thank you, your Honor.

6              MR. ADAMS:  Thank you, your Honor.

7                              -   -   -

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25